United States District Court
For the Northern District of California

1
2
3
4
5
6
7                     IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                              SAN JOSE DIVISION

10

11   ANGELO A. DELEUSE,                          Case No. 5:12-cv-02708-HRL

12                 Plaintiff,                     **ORDER GRANTING PLAINTIFF'S
                                                  MOTION FOR SUMMARY JUDGMENT
13          v.                                    AND DENYING DEFENDANT'S CROSS-
                                                  MOTION FOR SUMMARY JUDGMENT**
14   CAROLYN W. COLVIN,[1] Acting
     Commissioner, Social Security Administration,
15                                                [Re: ECF Nos. 20, 23]
                 Defendant.
16

17          Plaintiff  Angelo A. Deleuse ("Deleuse") appeals a final decision of the Commissioner of

18   Social Security denying his application for a period of disability and disability insurance benefits

19   under Title II of the Social Security Act.  Before the Court are the parties' cross-motions for

20   summary judgment, which have been fully briefed.  *See* ECF Nos. 20, 23.[2]  Upon consideration of

21   the briefing[3] and for the reasons set forth below, Deleuse's motion is granted and the

22   Commissioner's motion is denied.[4]

23

24   [1] Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted as the defendant in
25   this action in place of her predecessor, Michael J. Astrue.  *See* Fed. R. Civ. P. 25(d).

26   [2] No reply brief was filed.

27   [3] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

28   [4] All parties have consented to this matter being adjudicated by the undersigned.  See 28 U.S.C. §
     636(c); Fed. R. Civ. P. 73.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I. BACKGROUND**

Deleuse was born in 1972 and was thirty-four years old at the time of the administrative hearing in this case.  Admin. R. ("A.R.") 31.  He has a high school education, he is able to communicate in English, and he has past relevant work as an animal caretaker and a salesperson.  *Id*. On August 26, 2008,[5] Deleuse applied for a period of disability and disability insurance benefits, alleging disability beginning October 16, 2006.  AR 157.  He claimed inability to work as a result of pain, fatigue, depression from a back injury, and a herniated disc.  AR 103.  Deleuse's application was denied initially and upon reconsideration.  AR 22.  An Administrative Law Judge ("ALJ") conducted a hearing on September 7, 2010.  *Id*.  On December 20, 2010, the ALJ issued a written decision concluding that Deleuse was not disabled and thus was not entitled to disability insurance benefits.  AR 22-32.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  AR 5.  Deleuse now seeks judicial review of the denial of benefits.

**II. LEGAL STANDARD**

**A.     Standard of Review**

This court has the authority to review the Commissioner's decision to deny benefits.  42 U.S.C. § 405(g).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational

---

[5] The Administrative Law Judge's written decision states that Deleuse's application was filed on July 15, 2008.  AR 22.  However, the application in the administrative record is dated August 26, 2008.  AR 157.  The August 26 application states that Deleuse had filed a previous application, *id.*; it may be that the earlier application was filed on July 15.  In any event, this discrepancy does not affect the court's analysis.

5:12-cv-02708-HRL
ORDER GRANTING PLAINTIFF'S MOTION FOR SJ AND DENYING DEFENDANT'S MOTION FOR SJ

1   interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523;

2   *Drouin*, 966 F.2d at 1258.

3   **B.      Standard for Determining Disability**

4          Disability benefits are available under Title II of the Social Security Act when an eligible

5   claimant is unable "to engage in any substantial gainful activity by reason of any medically

6   determinable physical or mental impairment . . . which has lasted or can be expected to last for a

7   continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

8          "ALJs are to apply a five-step sequential review process in determining whether a claimant

9   qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009).

10  At step one, the ALJ determines whether the claimant is performing "substantial gainful activity."

11  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled; if not, the analysis proceeds to

12  step two.  *Id*.  At step two, the ALJ determines whether the claimant suffers from a severe

13  impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If not, the claimant is

14  not disabled; if so, the analysis proceeds to step three.  *Id*.  At step three, the ALJ determines

15  whether the claimant's impairment or combination of impairments meets or equals an impairment in

16  the Listings.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is disabled; if not, the analysis

17  proceeds to step four.  *Id*.  At step four, the ALJ determines whether the claimant has the residual

18  functional capacity ("RFC") to do his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If

19  so, the claimant is not disabled; if not, the analysis proceeds to step five.  *Id*.  At step five, the ALJ

20  determines whether the claimant can do other jobs in the national economy.  20 C.F.R. §

21  404.1520(a)(4)(v).  If so, the claimant is not disabled; if not, the claimant is disabled.  *Id*.  "The

22  burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step

23  five." *Bray,* 554 F.3d at 1222.

24                              **III. DISCUSSION**

25         The ALJ determined that Deleuse's earnings records showed that Deleuse had acquired

26  sufficient quarters of coverage to remain insured through December 31, 2011 ("date last insured").

27  AR 22.  At step one, the ALJ  found that there was some evidence that Deleuse had performed

28  substantial gainful activity between the alleged onset date of October 16, 2006 and the date of ALJ's

**United States District Court**
For the Northern District of California

3

United States District Court
For the Northern District of California

1   written decision, December 20, 2010; however, "because earnings are mostly not at substantial

2   gainful activity levels," the ALJ elected to proceed to step two.  AR 24.  At step two, the ALJ found

3   that Deleuse has a severe combination of impairments consisting of "cervical degenerative disc

4   disease; mild obesity; depression, NOS[6]; anxiety, NOS; and cannabis abuse.  *Id.*  At step three, the

5   ALJ concluded that Deleuse's combination of impairments did not meet or equal an impairment in

6   the Listings.  *Id.*

7           At step four, the ALJ determined that Deleuse has the RFC to perform light work[7] with the

8   following limitations:  "the ability to sit/stand/walk for 6/8 hours each in a workday"; and "no

9   ability to work in contact with the public."  AR 25.  Based upon that RFC, the ALJ concluded that

10  Deleuse could not perform his past relevant work as an animal caretaker or a salesperson, because

11  both of those jobs require contact with the public.  AR 31.  However, at step five the ALJ applied

12  the Medical-Vocational Guidelines to determine that Deleuse can perform other jobs that exist in

13  significant numbers in the national economy.  AR 31-32.  Deleuse challenges the ALJ's step five

14  determination, asserting that the ALJ erred in crediting the opinions of examining and consulting

15  physicians over the opinions of Deleuse's treating physicians.

16          **Legal Standard With Respect To Medical Evidence**

17          When evaluating medical evidence, an ALJ must give a treating physician's opinion

18  "substantial weight."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

19  "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present

20  'specific and legitimate reasons' for discounting the treating physician's opinion, supported by

21  _____

22  [6] "NOS" is shorthand for "Not otherwise specified."

23  [7] "Light work" is defined as follows:

24          Light work involves lifting no more than 20 pounds at a time with frequent lifting or
            carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be

25          very little, a job is in this category when it requires a good deal of walking or
            standing, or when it involves sitting most of the time with some pushing and pulling

26          of arm or leg controls.  To be considered capable of performing a full or wide range
            of light work, you must have the ability to do substantially all of these activities.  If

27          someone can do light work, we determine that he or she can also do sedentary work,
            unless there are additional limiting factors such as loss of fine dexterity or inability to

28          sit for long periods of time.

20 C.F.R. § 404.1567(b).

5:12-cv-02708-HRL
ORDER GRANTING PLAINTIFF'S MOTION FOR SJ AND DENYING DEFENDANT'S MOTION FOR SJ

United States District Court
For the Northern District of California

1  substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a

2  treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear

3  and convincing" reasons for disbelieving the treating physician. *Id.* at 1228 n.8. Because the ALJ

4  relied upon other physicians' opinions as bases for discounting the treating physicians' opinions, the

5  ALJ was required to articulate only "specific and legitimate" reasons, supported by substantial

6  evidence. *See Bray*, 554 F.3d at 1228.

7       The evidence in the record is summarized below:

8       **Jeffrey K. Etemad, D.O. (treating physician)**

9       The record contains correspondence and progress notes documenting Deleuse's treatment by

10  Dr. Jeffrey Etemad, a doctor of osteopathic medicine. Deleuse suffered injury to his neck, spine,

11  and pelvis when working as a furniture mover. AR 389. In correspondence dated May 2003, Dr.

12  Etemad reported to another doctor that Deleuse had thoracic disc displacement, lumbar disc

13  displacement, disc protrusion, and related issues. AR 295. In correspondence dated June 2003, Dr.

14  Etemad stated that Deleuse suffered moderate to severe muscle spasm with associated

15  ligamentous/articular strain in the thoracolumbar spine and costal regions. AR 297. Deleuse was

16  treated with osteopathic manipulative medicine and prescribed an exercise program. *Id.* Dr.

17  Etemad indicated that Deleuse would be following up with Dr. Etemad's associate, Dr. Quoc Vo,

18  because Dr. Etemad was leaving the practice. *Id.*

19       As discussed below, Dr. Vo started treating Deleuse at some point after Dr. Etemad left and

20  appears to have seen Deleuse last in September 2008. AR 346-58. Dr. Etemad began treating

21  Deleuse again in November 2008, and continued treatment through July 2010. AR 389-91, 506-23,

22  553-71, 607-08. In November 2008, Dr. Etemad assessed Deleuse with lumbar disc displacement,

23  thoracic disc displacement, muscle spasm, cervical disc displacement, and somatic dysfunction. AR

24  390. He limited Deleuse to sitting for thirty minutes at a time, for a total of four hours per day,

25  twice per week, and also imposed limits on walking and lifting. *Id.* Dr. Etemad also limited

26  Deleuse to bicycling a maximum of ten blocks and for other modes of travel directed him to stand

27  on a bus or ride in a car where he could change positions frequently. *Id.*

28       Over the next several months, Dr. Etemad documented Deleuse's continuing back pain

United States District Court
For the Northern District of California

deriving from disc displacement, muscle spasm, and somatic dysfunction.  *See, e.g.,* AR 506-23.  At times Deleuse reported improvement in his pain and at time he reported worsening pain.  *Id.*  Over time, Dr. Etemad changed Deleuse's exertional limitations slightly – for example, from sitting thirty minutes at a time in November 2008, *see* AR 390, to sitting for fifteen minutes at a time in June 2009, *see* AR 506.  However, Dr. Etemad consistently reported that Deleuse had significant limitations on sitting, walking, and lifting and that he must have a sit/stand option at work.  AR 506-23.

In July 2010, Deleuse reported improvement in pain, readiness to proceed with vocational rehabilitation, and attendance at school full-time.  AR 553.  However, Dr. Etemad stated that he continued to have severe limits on lifting and repetitive activity, and on his sit/stand endurance.  *Id.*  Dr. Etemad found that Deleuse was still limited to sitting for only fifteen minutes at a time, a total of two hours per day.  AR 554.  In August 2010, Dr. Etemad found that Deleuse could return to work for twelve hours per week at four hours per day over three non-consecutive days.  AR 608.  He again imposed a limitation on sitting of up to fifteen minutes at a time for up to two hours per day.  *Id.*

**Quoc Vo, D.O. (treating physician)**

The record contains several progress notes documenting Deleuse's treatment by Dr. Quoc Vo, a doctor of osteopathic medicine, from October 2007 through September 2008.  AR 346-58.  In October 2007, Deleuse reported that although he had experienced improvement in his back and neck pain since his last visit in July 2004, more recently his pain had been worsening.  AR 356.  On examination, Dr. Vo found Deleuse to be stable neurologically, but found "significant ligamentous/articular strain of the lumbar, sacral, and pelvic areas."  AR 357.  Dr. Vo prescribed a conservative treatment plan of osteopathic manipulative medicine to decrease somatic dysfunction and help alleviate pain.  *Id.*

Deleuse saw Dr. Vo every month or two for the next year.  AR 346-58.  Dr. Vo continued treatment with gentle osteopathic manipulative medicine, including manual traction, and prescribed home exercises.  *Id.*  Deleuse reported improvement in November 2007, although Dr. Vo's notes from that visit list Deleuse's work status as "[t]emporary disability."  AR 258.  The following

**United States District Court**
For the Northern District of California

month, in December 2007, Deleuse reported difficulty bicycling even four blocks as a result of lower back pain.  AR 355.

In February 2008, Deleuse had become "quite decompensated," with moderate muscle spasm and associated ligamentous/articular strain in the lumber, sacral, and pelvic areas.  AR 353.  Dr. Vo prescribed twelve sessions of physical therapy to increase Deleuse's muscle function.  *Id*.  Dr. Vo also noted Deleuse's work status as "[t]emporary disability."  *Id*.  In March 2008 and April 2008, Deleuse reported slight improvement to his lower back pain, although Dr. Vo noted his work states as "[u]nchanged."  AR 354, 352.  In June 2008, Deleuse continued to report lower back pain, exacerbated by riding BART.  AR 351.  Dr. Vo. requested authorization for a thoracic facet block for the T9 through T7 disc protrusions.  *Id*.  Dr. Vo noted Deleuse's work status as "[u]nchanged."  *Id*.  In July 2008, Deleuse reported feeling stronger following several physical therapy sessions, but continued to complain of lower back pain.  AR 350.  Dr. Vo noted that Deleuse was able to walk a little further than before and was able to sit for up to twenty minutes at a time.  *Id*.  His work status was unchanged.  *Id*.

In September 2008, Deleuse reported increased pain from T8 into the low back.  AR 348.  On examination, Dr. Vo found moderate to severe muscle spasm with associated ligamentous/articular strain in the cervical, thoracic, lumbar, sacral, and pelvic areas.  *Id*.  Dr. Vo requested an MRI to evaluate neurological conditions of the low back, and requested a facet block at the lumbar areas.  *Id*.  Dr. Vo noted that Deleuse's work status was "[t]emporary disability."  *Id*.

**Calvin Pon (examining physician)**

Dr. Calvin Pon, a medical doctor in the field of orthopaedics, examined Deleuse in May 2008 and October 2008 at the request of the Commissioner.  *See* AR 339-41, 377-80.  In May 2008, Dr. Pon diagnosed Deleuse with chronic neck pain and chronic diffuse back pain.  AR 341.  Based on his examination and his review of the medical record, Dr. Pon concluded that Deleuse can sit, stand, and/or walk for a total of six hours during an eight-hour workday.  *Id*.  Dr. Pon found that Deleuse could climb stairs frequently but limited stooping, crouching, kneeling, and squatting to occasional.  *Id*.  Dr. Pon found no restrictions with respect to right hand pushing and pulling, or with respect to left leg/ foot.  *Id*.

7

**United States District Court**
For the Northern District of California

1    In October 2008, Dr. Pon noted that Deleuse was working sixteen hours a week in a jewelry

2 store.  AR 378,  Dr. Pon diagnosed the same chronic neck and back pain, but concluded that

3 Deleuse could stand and/or walk for four to six hours in an eight-hour work day, and could sit for

4 six hours in an eight-hour day work day.  AR 379.  Dr. Pon found no limit on pushing leg/foot

5 control despite Deleuse's complaints of right leg and knee pain.  *Id.*

6        **Louis Lesko, M.D. (examining physician)**

7    Dr. Louis Lesko examined Deleuse in April 2010 at the request of the Commissioner.  AR

8 549-52.  Dr. Lesko reviewed Deleuse's medical history and conducted a physical examination.  *Id.*

9 He concluded that the physical examination was within the normal range, and that although Deleuse

10 might have some degenerative changes in his discs, there was no evidence of a full blown

11 herniation.  AR 551.  Dr. Lee found Deleuse to be able to perform most functional activities without

12 limitation for a full day, but found that Deleuse's abilities to reach overhead and to carry 26-50

13 pounds were limited to a half-day.  AR 552.  Dr. Lee also determined that Deleuse should not

14 operate heavy machinery in light of his marijuana use.  *Id.*

15        **Faith Tobias, Ph.D. (examining physician)**

16    Dr. Faith Tobias, a psychiatrist, examined Deleuse in June 2008 and October 2008 at the

17 request of the Commissioner.  AR 342-45, 372-76.  On June 2008, Dr. Tobias diagnosed Deleuse

18 with cannabis use, noting that Deleuse claimed it was medical marijuana use, as well as adjustment

19 disorder with mixed anxiety and depressed mood.  AR 344.  She found that he had mild to moderate

20 limitations in two out of twelve work-related abilities (withstanding the stress of a work day and

21 maintaining emotional stability), and that he had no limitations in ten out of twelve work-related

22 abilities.  AR 345.  In October 2008, Dr. Tobias found that Deleuse had additional mild limitations

23 in several work-related abilities.  AR 376.  She expressed surprise that Deleuse had scored lower

24 than expected with respect to various testing.  *Id.*

25        **R. Lee, M.D. (consulting physician)**

26    In December 2008, Dr. R. Lee, M.D. reviewed the medical record at the request of the

27 Commissioner.  AR 397-410.  Dr. Lee found Deleuse to be moderately limited in seven out of

28 twenty work-related mental activities, and not significantly limited in thirteen out of twenty work-

United States District Court
For the Northern District of California

1   related mental activities. AR 408-09.

2           **Deleuse (Plaintiff)**

3           At the hearing, Deleuse testified that he was on a break from attending community college;

4   that when he was in college he was given accommodations such as a podium in the back of the

5   room, a scribe (someone to write for him), and extra time to complete tests. AR 59. He said that he

6   worked at the counter in his father's jewelry store; he did not lift or carry anything. *Id*. However,

7   he testified that the job was difficult for him, because he was on his feet a lot and had to move

8   slowly because of back pain. AR 64-65. Deleuse testified that his worst area of pain was between

9   his shoulder blades, but that he also had a great deal of stiffness and aches in his lower back. AR

10  71. When he got injured he weighed 130 pounds and now he weighs 183 pounds. AR 72. Deleuse

11  is about 5'5" tall. AR 73. He stated that he has been using medical marijuana for pain since 1996.

12  AR 74. He described his employment from 1999 to 2005, working at Select Comfort, where he

13  mostly demonstrated mattresses and talked to customers about how they were good for someone

14  with back injuries. AR 75. Deleuse was laid off when the Select Comfort location he worked at

15  closed down. AR 81. In 2005 he worked at the SPCA. AR 82. He was fired in 2006 for falsifying

16  a time card. AR 82.

17          **Max Deleuse (Plaintiff's Father)**

18          Deleuse's father, Max, testified that Deleuse worked at Max's jewelry store. AR 89. Max

19  described Deleuse's duties as opening the safe in the morning, pulling out three boxes of

20  merchandise and unpacking the boxes into the window and showcases. *Id*. Deleuse worked part-

21  time, up to twenty-four hours a week. *Id*. Sometimes Deleuse comes in late or does not come in

22  because of back pain. AR 90. He needs to take breaks every hour or hour and a half. *Id*.

23          **Maria Del Carmen Deleuse (Plaintiff's Mother)**

24          Deleuse's mother, Maria, submitted a third party report stating that Deleuse could not stand

25  for eight hours, which affected his ability to work at the family jewelry store. AR 243-50. She also

26  said that he has trouble thinking clearly and that he is no longer able to ride a bicycle. *Id*.

27          **ALJ's Determination Of RFC**

28          As set forth above, Deleuse's treating physician, Dr. Etemad, documented Deleuse's back

                                                    9

1   pain over an extended period of time, provided medical explanations for that pain (thoracic disc

2   displacement, lumbar disc displacement, disc protrusion, moderate to severe muscle spasm with

3   associated ligamentous/articular strain, and related issues), and clearly did not believe Deleuse to be

4   malingering.  Dr. Etemad opined expressly that Deleuse could sit for only fifteen minutes at a time

5   and could work for only four hours per day.  These opinions are inconsistent with a RFC of light

6   work.

7           In choosing to give treating physician Dr. Etemad's opinion "less than controlling weight,"

8   the ALJ appears to have been heavily influenced by treating notes of a physician's assistant

9   indicating that Deleuse fell when he missed a step while leaving a club in San Francisco in July

10  2010, and other records indicating that Deleuse had fallen while bicycling in August 2010.  AR 27.

11  The ALJ opined that Dr. Etemad's limitations on Deleuse's work hours and activities would have

12  been influenced had Dr. Etemad been "aware of the claimant's extracurricular activities."  *Id*.  The

13  evidence regarding these two falls do not appear in the record at the location specified by the ALJ.[8]

14  The court did find a computer printout that appears to show that Deleuse was seen in an emergency

15  room after he "tripped on an uneven curb while leaving a club in San Francisco."  AR 592.  The

16  court could not locate evidence of the bicycle fall.  Even assuming that the evidence appears

17  elsewhere in the record and was summarized accurately by the ALJ, the ALJ either did not realize or

18  ignored the fact that Dr. Etemad was fully aware that Deleuse rode a bicycle, and in fact limited

19  Deleuse to bicycling a maximum of ten blocks at a time.  AR 390.  To the extent that the ALJ

20  believed that Deleuse's presence at a club made his reported pain less credible, the Ninth Circuit has

21  held that a claimant need not be utterly incapacitated to be disabled, and that a claimant's pursuit of

22  daily activities such as going to the mall does not provide a sufficient basis for discrediting the

23  claimant.  *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001).  The ALJ also noted that Dr.

24  Etemad used only minimally invasive treatment modalities, such as medication and massage

25  therapy.  AR 27.  However, the ALJ does not cite to other medical evidence indicating that a more

26  aggressive treatment modality would have been more appropriate or that Deleuse rejected more

27  aggressive treatment.  Accordingly, the court concludes that the ALJ failed to provide legitimate

28
_____

[8] The ALJ cites to Exhibit 18E, but that exhibit is a statement of Deleuse's attorney that does not
reference the events described by the ALJ.  *See* AR 280-88.

reasons for discounting Dr. Etemad's opinion.

The ALJ did not even address the opinion of Deleuse's other treating physician, Dr. Vo, who also treated Deleuse over an extended period of time, also documented Deleuse's pain and the medical reasons for that pain, and also found that Deleuse was disabled from full-time work.

The ALJ credited the opinion of Dr. Pon,[9] who examined Deleuse twice at the request of the Commissioner. Dr. Pon concluded that Deleuse has the RFC to do light work; however, even Dr. Pon concluded that Deleuse was limited to walking or standing for four to six hours in a work day, and to sitting for six hours in a work day. The ALJ adopted the RFC to do light work, but rejected Dr. Pon's postural limitations as too restrictive in light of the ALJ's view that Deleuse could engage in "fairly normal daily activities." AR 28.

The ALJ also credited the opinion of Dr. Lesko, who examined Deleuse once at the request of the Commissioner. Dr. Lesko concluded that Deleuse had a medium RFC with limitations on working with machinery because of cannabis use. The ALJ stated that he would give Deleuse the benefit of the doubt and find a light RFC rather than a medium RFC.

The ALJ discounted the third party report from Deleuse's mother, concluding that because she did not know that Deleuse still rode a bicycle, she was not well-informed about his condition. AR 29.

As noted above, the ALJ failed to give legitimate reasons for discounting the opinion of Dr. Etemad, and failed even to address the opinion of Dr. Vo. The Commissioner argues that the ALJ considered Dr. Vo's opinion, because the ALJ's written decision makes a single passing reference to the fact that "additional facet blocks have been recommended by Dr. Quoc Vo." *See* AR 26. Even if the court would to conclude that the ALJ considered Dr. Vo's opinion, the ALJ did not provide any reasons at all for discounting that opinion. The Commissioner argues that Dr. Vo's progress notes over the course of a year do not constitute medical opinion because they do not satisfy the Code of Federal Regulations' definitions of medical "opinions" or "reports." The Commissioner has not cited, the court has not discovered, any case law holding that medical progress notes that fail

---

[9] The ALJ states that he relies upon the opinions of both Dr. Pon and Dr. Jody Balich, a diagnostic radiologist. AR 27. However, the cited portions of the record contain only Dr. Pon's reports. The court was unable to find any separate reports of Dr. Balich in the record.

5:12-cv-02708-HRL
ORDER GRANTING PLAINTIFF'S MOTION FOR SJ AND DENYING DEFENDANT'S MOTION FOR SJ

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   to comply strictly with the Regulations' definitions of "opinions" and "reports" are not entitled to

2   consideration by the ALJ.  Accordingly, the Commissioner's argument with respect to Dr. Vo's

3   progress notes is unpersuasive.  Moreover, even if Dr. Vo's notes were excluded from

4   consideration, the ALJ failed to provide legitimate reasons for discounting the opinion of Dr.

5   Etemad.  Dr. Etemad's opinion, if credited, clearly establishes Deleuse's inability to do full-time

6   work.

7           The court is fully aware of the deference that must be accorded to the ALJ's decision.  Even

8   when other evidence in the record might support a contrary finding, it is not this court's role to

9   second-guess the ALJ's determination so long as it is reached through application of the correct

10  legal standards and is supported by substantial evidence in the record.  *See Rollins v. Massanari,*

11  261 F.3d 853, 857 (9th Cir. 2001).  However, for the reasons discussed above, the court concludes

12  that in this case the ALJ's decision is *not* supported by substantial evidence in the record.  The ALJ

13  did not provide legitimate reasons for discounting the opinions of Deleuse's treating physicians (or

14  *any* reasons for discounting Dr. Vo's opinion).  The treating physicians' opinions establish

15  disability.  Accordingly, the court will grant Deleuse's motion for summary judgment and remand

16  for payment of benefits.  *See Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998) (remand for

17  immediate payment of benefits is appropriate where disability is clear from the record).

18                                              **IV. ORDER**

19          For the foregoing reasons,

20          (1) Plaintiff's motion for summary judgment is GRANTED and the matter is remanded to

21  the Commissioner for payment of benefits;

22          (2) Defendant's motion for summary judgment is DENIED; and

23          (3) the Clerk shall close the file.

24

25  Dated:  September 26, 2013                    _____

26                                              HOWARD R. LLOYD
                                                UNITED STATES MAGISTRATE JUDGE

27

28

5:12-cv-02708-HRL Notice has been electronically mailed to:

Theophous H Reagans , Jr     theophous.reagans@ssa.gov

Young Chul Cho      young.cho@rohlfinglaw.com, enedina.perez@rohlfinglaw.com

**United States District Court**
For the Northern District of California

5:12-cv-02708-HRL
ORDER GRANTING PLAINTIFF'S MOTION FOR SJ AND DENYING DEFENDANT'S MOTION FOR SJ